IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| OTHELLA GOUGH | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: BPG-21-14 |
| MARK SEMEXAN | * | |
| | * | |
| Defendant | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4. (ECF Nos. 18, 19). Currently pending are defendant's Motion for Summary Judgment ("Motion") (ECF No. 37), plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Partial Summary Judgment ("plaintiff's Cross-Motion") (ECF No. 42), defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment ("defendant's Opposition and Reply") (ECF No. 47), and plaintiff's Reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment ("plaintiff's Reply") (ECF No. 50). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, defendant's Motion for Summary Judgment (ECF No. 37) is granted in part and denied in part, and plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 42) is denied.

I. **BACKGROUND**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). When the parties have filed cross motions for summary judgment, in "considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

On April 9, 2019, plaintiff Othello Gough ("plaintiff"), a sentenced prisoner, was transferred from the Baltimore City Correctional Center ("BCCC") to the Maryland Reception, Diagnostics and Classification Center ("MRDCC") for a scheduled medical appointment. (ECF No. 3 at 2 ¶ 7). Plaintiff arrived at the MRDCC handcuffed to another detainee by one hand, with his other hand free, although his legs were restrained with leg irons. (ECF Nos. 3 at 2 ¶ 9, 37-2 at 7). Soon after plaintiff's arrival, defendant Mark Semexan ("defendant"), a correctional officer, stood behind plaintiff and began to frisk search him. (ECF No. 3 at 2 ¶¶ 10-12). Plaintiff alleges that during the frisk, defendant "inappropriately grabbed Plaintiff's upper thigh and groin area." (Id. at 3 ¶ 16).[1] In response, plaintiff "asked him was he a faggot." (ECF No. 37-2 at 6). Defendant then slapped plaintiff on the right side of his head and face. (ECF No. 3 at 3 ¶ 18). Defendant subsequently "took a defensive stance with his fists clenched, then swiftly walked away" as two other correctional officers intervened and escorted plaintiff back to the BCCC. (Id. ¶¶ 20-21). Plaintiff claims that he "stumbled forward" because of the slap but did not fall to the ground. (ECF

---

[1] Defendant, however, alleges that plaintiff "used his free right hand and grabbed my right hand." (ECF No. 37-4 at 1).

No. 37-2 at 7). Plaintiff alleges extensive injuries resulting from this incident. (ECF No. 3 at 6 ¶ 44).

On January 4, 2021, plaintiff filed suit against defendant in this court, asserting four counts: (1) a claim under 42 U.S.C. § 1983 based on violations of the Eighth and Fourteenth Amendments; (2) excessive force in violation of Article 24 of the Maryland Declaration of Rights; (3) cruel and unusual punishment in violation of Articles 16 and 25 of the Maryland Declaration of Rights; and (4) battery. (Id. at 6-11). On November 1, 2021, defendant moved for summary judgment on all counts. (ECF No. 37). On November 22, 2021, plaintiff moved for partial summary judgment as to Counts I, III, and IV. (ECF No. 42).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that

party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, and must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party. Anderson, 477 U.S. at 252. Where, as here, the parties file cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co., 627 F. Supp. 170, 171 (D. Md. 1985).

## III. DISCUSSION

Plaintiff asserts four counts in his Complaint: (1) a claim under 42 U.S.C. § 1983 based on violations of the Eighth and Fourteenth Amendments; (2) excessive force in violation of Article 24 of the Maryland Declaration of Rights; (3) cruel and unusual punishment in violation of Articles

4

16 and 25 of the Maryland Declaration of Rights; and (4) battery.  (ECF No. 3 at 6-11).  At the outset, plaintiff's Fourteenth Amendment claim under 42 U.S.C. § 1983 in Count I and plaintiff's excessive force claim under Article 24 of the Maryland Declaration of Rights in Count II can be easily resolved.  Article 24 of the Maryland Declaration of Rights is the state law equivalent of the Fourteenth Amendment.  Bost v. Wexford Health Sources, Inc., No. ELH-15-3278, 2018 WL 3539819, at *42 (D. Md. July 23, 2018).  Article 24, therefore, is interpreted *in pari materia* with the Fourteenth Amendment, "such that an Article 24 claim will fail if a Fourteenth Amendment claim fails."  Palmont v. Wright, No. 19-cv-0568-PWG, 2020 WL 7043850, at *3 (D. Md. Dec. 1, 2020).  In this case, because plaintiff is a sentenced prisoner, his claim of excessive force arises only under the Eighth Amendment and Maryland's state law analogs, not the Fourteenth Amendment.  Id.  ("[T]he primary vehicle for a post-conviction detainee . . . to bring excessive force claims is the Eighth Amendment, not the Fourteenth.") (citing Whitley v. Albers, 475 U.S. 312, 327 (1986)).  Accordingly, defendant's Motion is granted as to Count II as well as plaintiff's Fourteenth Amendment claim in Count I, and those claims are dismissed.[2]

### A. Excessive Force under the Eighth Amendment

Defendant argues that plaintiff has failed to establish an excessive force claim under the Eighth Amendment in violation of 42 U.S.C. § 1983.  (ECF No. 37-1 at 8-9).  Plaintiff opposes defendant's position, contending that he provides sufficient evidence to establish an excessive force claim under the Eighth Amendment.  (ECF No. 42-1 at 7).  To establish a claim of excessive force under the Eighth Amendment, plaintiff must satisfy both an objective and a subjective test.  Brooks v. Johnson, 924 F. 3d 104, 112 (4th Cir. 2019).  Under the objective test, plaintiff

---

[2] Plaintiff concedes to dismissal of Count II and acknowledges that his claim of excessive force arises under the Eighth Amendment.  (ECF No. 42-1 at 2, n.1).

must show that "the force applied was sufficiently serious to establish a cause of action." Id. "This is not a high bar, requiring only something more than '*de minimis*' force." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 10 (1992)) (emphasis in original). Under the subjective test, plaintiff must show that defendant "acted with a sufficiently culpable state of mind." Id. (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)).

With respect to the objective test—whether the force applied was sufficiently serious to establish a cause of action—defendant argues that the slap constituted no more than de minimis force. (ECF Nos. 37-1 at 10-12, 47 at 1-3). Plaintiff, however, contends that defendant used more than de minimis force. (ECF Nos. 42-1 at 7-9, 50-1 at 1-3). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9-10 (emphasis in original) (holding that force was more than de minimis when plaintiff suffered bruising, swelling, loosened teeth, and a cracked dental plate) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). Nevertheless, the "extent of injury may also provide some indication of the amount of force applied." Id. at 37. "While a hard punch in the face is more likely than a slap to constitute excessive force, some courts have found that even a single slap to the face can amount to excessive force depending on the facts of the particular case." Campbell v. Smith, No. 0:08-3668-PMD, 2010 WL 1542644, at * 6 (D.S.C. April 19, 2010) (denying defendants' motion for summary

judgment as to plaintiff's excessive force claim stemming from the defendant officer's slap while plaintiff was restrained by handcuffs).

In support of his argument that the slap was de minimis, defendant cites to Anthony v. Schackmann, 402 Fed. Appx. 207, 208 (9th Cir. 2010) and Shelby v. Enlers, 429 Fed. Appx. 392, 393 (5th Cir. 2011). (ECF No. 37-1 at 11-12). The cases cited by defendant, however, are distinguishable from the instant case. In Anthony, for example, the plaintiff alleged that the defendant officer slapped his head with her open hand after the plaintiff requested rubber gloves for use in the dining hall. Anthony v. Schackmann, No. 07-CV-698-HU, 2009 WL 1065071, at *1-2 (D. Or. April 17, 2009). Other than complaints of headaches, the plaintiff suffered no other injuries. Id. at *3. The Ninth Circuit held that the "unprovoked, single slap constituted only de minimis force." 402 Fed. Appx. at 208. Similarly, in Shelby, the plaintiff, a post-conviction inmate, alleged that the defendant used excessive force when she slapped him on his ears causing pain and diminished hearing. 429 Fed. Appx. at 392. The plaintiff submitted medical evidence showing that he had swollen ears and that his ear canals "looked red" as a result of the slap. Shelby v. Enlers, No. 2:09cv221-KS-MTP, 2010 WL 4537930, at *3 (S.D. Miss. Sept. 24, 2010). The plaintiff was also "diagnosed with bilateral external otitis (inflammation of the external ear canal) and prescribed cortisporin ear drops and ibuprofen for neck pain," although another doctor reviewed the plaintiff's medical records and concluded that he suffered no ear injury, and that the plaintiff's alleged symptom of decreased hearing was caused by excessive ear wax, not the slap. Id. at *3-4. The district court granted summary judgment for the defendant as to the plaintiff's excessive force claim because "the force used was *de minimis* and there was very little, if any, injury." Shelby v. Enlers, No. 2:09cv221-KS-MTP, 2010 WL 4536777, at * 1 (S.D. Miss. Nov. 2, 2010). The Fifth Circuit affirmed, holding that "any force that may have been used by

[defendant] resulted in an injury which . . . is not sufficient to give rise to a claim of a constitutional violation." 429 Fed. Appx. at 393.

Here, however, there is evidence that plaintiff suffered more extensive injuries than the plaintiffs in Anthony and Shelby, indicating that defendant applied more than de minimis force when he slapped plaintiff.[3] For example, plaintiff testified during his deposition that he "stumbled forward" after the slap. (ECF No. 37-2 at 7). Following the slap, plaintiff's head started throbbing and his ear filled with fluid. (Id. at 8). Three days after the slap, plaintiff was diagnosed with "suppurative otitis," an infection or inflammation of the ear caused by trauma, and he was prescribed amoxicillin. (ECF Nos. 42-1 at 4, 50-3 at 12). Plaintiff's expert, Dr. David Bianchi, testified during his deposition that a likely cause of otitis is a slap in which a person cups his hand and hits another's ear (ECF No. 42-9 at 5), although as defendant notes, plaintiff testified that he does not know whether defendant slapped him with an open hand or a closed fist (ECF No. 37-2 at 6-7). There is also evidence that plaintiff continued to suffer from headaches, redness and "serous discharge" from the right ear in the days following the slap. (ECF No. 37-1 at 6).

Further, at a medical appointment on May 1, 2019, more than three weeks after the incident, plaintiff complained of hearing loss, although his doctor noted "some improvement" in the pain and drainage coming from his right ear. (ECF No. 50-3 at 18). In July 2020, more than a year after the incident, Dr. Bianchi examined plaintiff, noting that his right ear was "significantly diseased." (ECF No. 42-9 at 6). Specifically, Dr. Bianchi observed that plaintiff's right ear was "edematous," meaning swollen, and "there was some tympanosclerosis, which is a scarring effect

---

[3] While defendant is correct that the core judicial inquiry is the amount of force used, not the severity of injuries (ECF No. 47 at 2), the "extent of injury may also provide some indication of the amount of force applied." Wilkins, 559 U.S. at 37. The extent of plaintiff's injuries, therefore, are relevant for purposes of determining whether defendant's force was more than de minimis.

of the eardrum, and that it was slightly bulging." (Id.)  While plaintiff will have to prove at trial that his injuries are causally connected to defendant's slap, plaintiff provides sufficient evidence at this stage to permit a jury to reasonably conclude that defendant applied more than de minimis force when he slapped plaintiff.

With respect to the subjective test of an excessive force claim under the Eighth Amendment—whether defendant acted with a sufficiently culpable state of mind—the "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7.  The court also considers: (1) the need for the application of force, (2) the relationship between that need and the amount of force applied; (3) the extent of the injury; (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of the response.  Barnes v. Wilson, 110 F. Supp. 3d 624, 629 (D. Md. 2015) (citing Whitley, 475 U.S. at 321).  While the extent of the injury is a factor for the court to consider, it is ultimately the amount of force applied that matters.  Wilkins, 559 U.S. at 38.  The extent of the injury, however, "may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation . . . [and it] may also provide some indication of the amount of force applied."  Id. at 37.

As to the "core judicial inquiry"—whether force was applied to maintain or restore discipline, or maliciously and sadistically to cause harm—defendant argues that he applied "minor force" to maintain and restore discipline.  (ECF No. 37-1 at 12).  Specifically, defendant asserts that plaintiff's behavior "presented a perceived threat to the safety of the individuals present at the frisk search," and that "[a]ll force *ended* upon the single slap" and, thereafter, defendant "swiftly walked away."  (Id.) (emphasis in original).  Plaintiff, however, maintains that he was handcuffed

and facing away from defendant when he was slapped and "posed no safety risk to any party." (ECF No. 42-1 at 10-11). "Corrections officers act in a 'good faith effort to maintain or restore discipline'—that is, with a permissible motive—not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." Brooks, 924 F.3d at 113. Courts "owe officers 'wide-ranging deference' in their determinations that force is required to induce compliance with policies important to institutional security." Id. Corrections officers, however, use force maliciously "when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." Id.

In this case, there is evidence supporting both parties' positions. For example, with respect to defendant's argument that he applied minor force to maintain and restore discipline, there is evidence that plaintiff deliberately taunted defendant with a slur in the presence of approximately ten other inmates, suggesting that defendant slapped plaintiff in a good faith attempt to preserve internal order and ensure that other inmates comply with defendant's orders. (ECF No. 37-2 at 5-6). Defendant also applied a single slap in response to plaintiff's comment (id. at 7) and, after the slap, defendant "took two steps back and removed [himself] from the scene" (ECF No. 37-4 at 1). Further, as defendant notes, plaintiff was handcuffed by his left hand only, leaving his right hand free to assault defendant if he so chose (ECF Nos. 37-2 at 5, 47 at 7), and neither plaintiff nor defendant knew each other (see ECF No. 37-2 at 6), suggesting that defendant did not have any ill-will towards plaintiff prior to the incident and, therefore, did not slap plaintiff with the intent to cause harm. Under these circumstances, a jury could reasonably find that defendant perceived a threat when plaintiff used a slur during the frisk search and, as a result, attempted to maintain or restore discipline by slapping plaintiff a single time.

There is also evidence, however, from which a jury could reasonably find that defendant slapped plaintiff maliciously and sadistically. For example, while plaintiff was handcuffed by only one hand, his range of motion was limited because his left hand was handcuffed to another inmate, and the group of ten or so inmates were all handcuffed together, suggesting that it was unreasonable for defendant to perceive a risk to his physical safety. (ECF Nos. 50-1 at 6, 50-5 at 7-8). Plaintiff's legs were also restrained with leg irons. (ECF No. 37-2 at 7). In addition, defendant conducted the frisk search while standing behind plaintiff, limiting plaintiff's ability to potentially assault defendant.[4] (ECF Nos. 37-2 at 6, 50-1 at 6). Further, as plaintiff contends, defendant made no verbal commands to stop plaintiff's questioning and resorted immediately to physical force, at which point another officer stood in between plaintiff and defendant, with his back facing plaintiff. (ECF Nos. 37-2 at 7, 50-1 at 6). In sum, there is clearly a genuine dispute as to whether defendant applied force to maintain or restore discipline, or maliciously and sadistically to cause harm.

With respect to the remaining factors the court considers in determining whether defendant acted with a sufficiently culpable state of mind when he slapped plaintiff, the court finds that genuine disputes of material fact exist. As to the first factor—the need for the application of force—while defendant argues that force was necessary because plaintiff "was verbally abusive and disrupted a multiple-inmate search protocol" (ECF No. 37-1 at 11), plaintiff contends that there was no need for force in response to a single statement made by plaintiff because plaintiff's questioning may have stopped on its own or at least in response to verbal warnings, although none

---

[4] The parties dispute whether plaintiff touched defendant prior to the slap. While defendant testified that plaintiff "used his free right hand and grabbed my right hand" as defendant began the frisk search (ECF No. 37-4 at 1), plaintiff testified that he never grabbed defendant's hand at any point during the encounter (ECF No. 37-2 at 6).

11

were given. (ECF No. 42-1 at 11). Next, as to the relationship between the need for force and the amount of force applied, defendant asserts that he used "reasonable and proportional force quickly to maintain control to a perceived threat . . . [and that the slap was] "a brief, targeted use of minor corrective force." (ECF No. 37-1 at 11). Plaintiff, however, argues that the amount of force was disproportionate, evidenced by the extent of plaintiff's injuries. (ECF No. 42-1 at 11). Based on the conflicting evidence presented by the parties discussed above regarding the first two factors, the court concludes that the parties' arguments raise credibility questions for a jury to resolve.

As to the extent of plaintiff's injuries—the third factor for the court to consider—defendant relies on the Fifth Circuit's decision in Shelby for the proposition that plaintiff suffered only minor injuries. (ECF No. 37-1 at 11). As discussed above, however, plaintiff's injuries in this case are distinguishable from those in Shelby. See Section III.A at 7-9. While this factor weighs in favor of plaintiff, the court concludes that it is not enough on its own to warrant summary judgment for plaintiff, especially in light of the court's determination that factual disputes exist regarding the "core judicial inquiry" of whether defendant slapped plaintiff to maintain or restore discipline, or maliciously and sadistically to cause harm.

Further, as to the fourth factor—the extent of the threat to the safety of staff and inmates reasonably perceived by prison officials—defendant argues that he "received no advance warning as to the perceived threat from Plaintiff, and had no time to plan an appropriate response." (ECF No. 37-1 at 13). Contrary to defendant's position, plaintiff asserts that "[n]o *reasonable* person would perceive Plaintiff's question about Defendant's sexuality to be a breach of security or threat of same." (ECF No. 42-1 at 12) (emphasis in original). As discussed above with respect to the circumstances of defendant's frisk search and the conflicting evidence regarding whether plaintiff

grabbed defendant's hand prior to the slap (see Section III.A at 10-11), a genuine dispute of material fact clearly exists as to the extent of the threat as perceived by defendant.

Finally, as to the fifth factor—efforts made by defendant to temper the severity of the response—while defendant maintains that he removed himself from the situation following the slap (ECF No. 37-1 at 13), plaintiff contends that defendant failed to use verbal commands prior to the use of force and "had the opportunity to simply step away." (ECF No. 42-1 at 13). This factual dispute, however, is not appropriate for the court to resolve at the summary judgment stage. In sum, based on the conflicting evidence presented by the parties as to each of the factors discussed above, including the "core judicial inquiry" of whether defendant applied force to maintain or restore discipline, or maliciously and sadistically to cause harm, the court concludes that genuine disputes exist and, therefore, summary judgment is not warranted for either party on plaintiff's claim of excessive force under the Eighth Amendment. Accordingly, defendant's Motion is denied, and plaintiff's Cross-Motion is denied as to plaintiff's Eighth Amendment claim in Count I of the Complaint.

### B. Articles 16 and 25 of the Maryland Declaration of Rights

Like the Eighth Amendment, Articles 16 and 25 of the Maryland Declaration of Rights prohibit cruel and unusual punishment. Robinson v. Pytlewsi, No. 8:19-cv-01025-PX, 2020 WL 607030, at *5 (D. Md. Feb. 7, 2020). Articles 16 and 25, therefore, are interpreted *in pari materia* with the Eighth Amendment. Id. (citing Farmer v. Kavanaugh, 494 F. Supp. 2d 345, 371 (D. Md. 2007)). "Thus, any analysis as to the Eighth Amendment is equally applicable to [plaintiff's] claims under [Articles 16 and 25 of] the Maryland Declaration of Rights." Id. In this case, therefore, because the court has denied both defendant's Motion and plaintiff's Cross-Motion on the issue of excessive force under the Eighth Amendment, summary judgment is not warranted for

either party on plaintiff's claims under Articles 16 and 25 of the Maryland Declaration of Rights. Accordingly, defendant's Motion is denied, and plaintiff's Cross-Motion is denied as to Count III of plaintiff's Complaint.

### C. Immunity

Defendant contends that he is entitled to summary judgment as to plaintiff's state law claims in Counts III and IV of the Complaint because he is immune from suit under the Maryland Tort Claims Act ("MTCA"). (ECF No. 37-1 at 16-20). Plaintiff opposes defendant's position. (ECF No. 42-1 at 14-15). Under the MTCA, state personnel "shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article." Md. Code Ann., State Gov't § 12-105; see Nero v. Mosby, 890 F.3d 106, 124 (4th Cir. 2018). Section 5-522(b) provides that state personnel "are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence . . . ." Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). In this case, defendant argues that he is immune under the MTCA because his actions were at most negligent, and not malicious or grossly negligent. (ECF No. 37-1 at 17-18). Plaintiff, however, contends that defendant acted with malice because there was "no just cause for the [slap]" when plaintiff made "a single remark concerning Defendant's sexuality." (ECF No. 42-1 at 15).

The parties agree that an individual acts with actual malice under the MTCA when his conduct is "motivated by ill will, by an improper motive, or by an affirmative intent to injure." (ECF Nos. 37-1 at 17, 42-1 at 14) (citing Shoemaker v. Smith, 353 Md. 143, 164 (1999)). As discussed above with respect to plaintiff's excessive force claim under the Eighth Amendment, however, material factual disputes exist as to whether defendant slapped plaintiff to maintain or restore discipline, or maliciously and sadistically to cause harm. As a result, there is no basis for

summary judgment on the issue of immunity under the MTCA.[5]  Accordingly, defendant's Motion is denied on this issue.

Next, defendant contends that he is entitled to summary judgment as to plaintiff's state law claims in Counts III and IV based on public official immunity.  (ECF No. 37-1 at 20).  "A governmental representative is entitled to public official immunity under the common law when he or she is acting as a public official, when the tortious conduct occurred while that person was performing discretionary rather than ministerial acts, and when the representative acted without malice."  Livesay v. Balt. Cnty., 384 Md. 1, 12, 862 A.2d 33, 39 (2004).  Here, defendant asserts that public official immunity applies because he performed a discretionary act (i.e., a frisk search) and did not act in a malicious or grossly negligent manner.  (ECF No. 37-1 at 20).  Plaintiff agrees that defendant performed a discretionary act when he conducted a frisk search of plaintiff but maintains that defendant's slap was committed with malice.  (ECF No. 42-1 at 15).  For the same reasons discussed above with respect to the MTCA, there is no basis for summary judgment on the issue of public official immunity as there remains a material factual dispute as to whether defendant acted with malice when he slapped plaintiff.  Accordingly, defendant's Motion is denied on the issue of public official immunity.

Finally, defendant asserts that he is entitled to summary judgment as to plaintiff's Eighth Amendment claim in Count I based on qualified immunity.  (ECF No. 37-1 at 21-22).  An official who commits a constitutional violation is immune under the doctrine of qualified immunity if he

---

[5] As noted above, state personnel are also immune from suit under the MTCA for acts made without gross negligence. Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (emphasis added). While defendant argues that he did not act with gross negligence when he slapped plaintiff (ECF No. 37-1 at 18-20), plaintiff does not address this point in his motion papers. Given that factual disputes exist as to whether defendant slapped plaintiff with actual malice, however, the court need not address the issue of gross negligence.

reasonably believes his actions were lawful.  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011).  The court follows a two-part test to determine whether an officer is immune under qualified immunity: (1) whether a constitutional violation occurred and (2) whether the right violated was clearly established such that a reasonable officer would understand that his conduct was unlawful.  Id. (citing Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010)).

Here, defendant argues that he is entitled to summary judgment because he did not violate plaintiff's Eighth Amendment rights.  (ECF No. 37-1 at 22).  Plaintiff, however, maintains under the first prong of the qualified immunity test that he suffered a violation of his Eighth Amendment rights.  (ECF No. 42-1 at 16).  Plaintiff also contends, under the second prong, that his right to be free from "the use of force, so long as the force is shown to be more than *de minimis*, and that it was carried out maliciously or sadistically," was clearly established by the Supreme Court's decision in Wilkins prior to the events of the Complaint.  (Id.) (emphasis in original).  In light of material factual disputes regarding whether defendant committed a constitutional violation by using excessive force in violation of the Eighth Amendment, as discussed above, the court concludes that summary judgment is not warranted for defendant on the issue of qualified immunity.[6]  Accordingly, defendant's Motion is denied on this issue.

## IV.   CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (ECF No. 37) is GRANTED in part and DENIED in part, and plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 42) is DENIED.  Specifically, defendant's Motion for Summary Judgment

---

[6] Relatedly, plaintiff argues that he is entitled to summary judgment as to his claim of battery in Count IV of the Complaint because defendant committed an "intentional, malicious touching of Plaintiff."  (ECF No. 42-1 at 13-14).  As discussed above, however, a genuine dispute of material fact exists as to whether defendant slapped plaintiff maliciously.  See Section III.A. at 10-11.  Accordingly, summary judgment is not warranted for plaintiff on this issue.

(ECF No. 37) is GRANTED as to plaintiff's Fourteenth Amendment claim in Count I as well as plaintiff's claim under Article 24 of the Maryland Declaration of Rights in Count II, and those claims are dismissed.  Defendant's Motion for Summary Judgment (ECF No. 37) is DENIED as to all other issues, and plaintiff's Cross-Motion for Partial Summary Judgment (ECF No. 42) is DENIED as to all issues.[7]  A separate order will be issued.

June 9, 2022                                                       /s/
                                                                   Beth P. Gesner
                                                                   Chief United States Magistrate Judge

---

[7] The following claims remain: (1) plaintiff's Eighth Amendment claim under 42 U.S.C. § 1983 in Count I; (2) plaintiff's claims of cruel and unusual punishment in violation of Articles 16 and 25 of the Maryland Declaration of Rights in Count III; and (3) battery in Count IV.